**UNITED STATES of America, Plaintiff,**

**v.**

**ARTICLES OF BANNED HAZARDOUS SUBSTANCES CONSISTING OF 1030 GROSS (MORE OR LESS) OF BABY RATTLES, Defendants.**

**No. 83 Civ. 5011.**

United States District Court,
E.D. New York.

July 12, 1985.

---

Winstanley Luke, Asst. U.S. Atty., E. Dist. of N.Y., Brooklyn, N.Y., for plaintiff.

Daniel L. Jennings, Office of General Counsel, Washington, D.C., for U.S. Consumer Products Safety Commission.

Locker, Greenberg & Brainin, New York City, for M. Pressner & Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GLASSER, District Judge:

The United States seized defendant baby rattles on November 16, 1983, on the

grounds that they violate standards established by the rattle regulations, 16 C.F.R. Pt. 1510 (1985), enacted under the Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1261 et seq., and are therefore banned hazardous substances. 15 U.S.C. § 1261(q)(1)(A). The government seeks destruction of the rattles. Claimant M. Pressner & Co., the importer and distributor of the defendant rattles, challenges the seizure, arguing that the rattle regulations do not cover these items. Alternatively, claimant argues that even if the rattles are banned hazardous substances, they may be exported under the FHSA. 15 U.S.C. §§ 1264(b), 1265(a). Claimant requests the return of the rattles so that it may export them.

For the reasons discussed below, I find that the defendants are "rattles" covered by the rattle regulations. Moreover, I find that defendants do not meet the standards set by the rattle regulations and are therefore banned hazardous substances under the FHSA. In addition, because the rattles will be no less hazardous abroad than they are in this country, and because there is no statutory authority mandating the export order sought by claimant, there is every reason to respect the express policy of the Consumer Products Safety Commission (CPSC) prohibiting export of products that violate FHSA standards or regulations if they have moved or been sold in domestic commerce. The rattles are therefore condemned and must be destroyed. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, I hereby make the following findings of fact and conclusions of law.

### I. Findings of Fact

Claimant M. Pressner & Co. is an importer and manufacturer of novelties and party goods. Tr. 47. During the late 1970s, it began importing and distributing in domestic commerce the two types of rattles that are defendants in this action. *Id.* One, claimant's model no. 56896, is a plastic, 2½

inch ball and stem rattle of the traditional "lollipop" design. Tr. 49 (stipulation of parties). The other rattle, marketed by claimant as model no. 03456, is 2 inches long and has a heart-shaped head and a ring handle. During the years 1980–82, it was advertised in the "Toy" Section of claimant's catalogs, which contain separate sections for toys and party goods. Tr. 50, 57. Both models make noise when shaken. They were sold to craft and party supply stores, Tr. 53, for use as favors or tie-on decorations in corsages, on gifts, and on cakes. Tr. 50–51, 56. The party goods retailers either sold the items directly to consumers or attached them to corsages, cakes, etc., before sale. Claimant's Proposed Findings of Fact at 2.

In August and September 1982, the CPSC collected five rattle samples from claimant's warehouse in Brooklyn and from a party goods store in Mt. Vernon that is one of claimant's customers. The CPSC subsequently informed claimant, in a letter dated October 19, 1982, that of the four samples that fell within the scope of the regulations,[1] all failed to meet the test criteria set forth in 16 C.F.R. § 1510.3. The CPSC requested that claimant recall the lollipop shaped model (no. 56896) because it was more likely to be given to children, Tr. 12–13, and that claimant cease distributing the other three models.

In response, claimant asserted both that the rattle regulations did not apply to the samples and that the rattles did not pose the impaction or choking hazards that the regulations were designed to remedy. Letter of Aaron Locker to CPSC, November 8, 1982. On November 15, 1983, the government brought this action, seeking a decree of condemnation under 15 U.S.C. § 1265(a). Pursuant to an arrest warrant in rem, the United States Marshal seized defendant rattles at claimant's warehouse on the following day. At the time of the seizure, defendants were not marked for export. *See* Claimant's Proposed Findings of Fact,

---

**1.** The CPSC's letter said that one of the models was so small that it was not covered by the regulations.

¶ 11 (claimant intended to mark cartons for export).

Claimant continued to advertise one of the rattle models that are the subject of this suit, and to sell both models in interstate commerce, for approximately two months after it received the Commission's November 1982 letter. Tr. 64; Plaintiff's Exhibits 2(A)–2(K), 2(N)–2(S). Claimant agreed to stop distributing the rattles after it was informed that it would not have to recall the lollipop-shaped model. Tr. 63.[2] Nevertheless, claimant made four shipments of the rattle models after that date—two to Puerto Rico on January 21 and August 24, 1983; one to Aruba, outside the Continental United States, on April 22, 1983; and one to Massachusetts on October 4, 1983. Tr. 66. Claimant did not inform the CPSC of the export shipment to Aruba. Tr. 66–67.

There is ample evidence to support a finding that defendant rattles moved or were offered for sale in domestic commerce during 1983, prior to seizure.[3] Claimant advertised the rattles in its catalogs for 1980–1982, thereby offering them for sale. The fact that the rattles may have been dropped from the 1983 catalog[4] does not rebut the inference that the rattles moved and were offered for sale in commerce, in view of the number of actual shipments made during 1983, including one just a month before defendants were seized. *See* Plaintiff's Exhibit 2(T).

In a letter dated May 17, 1984, claimant's President, Jerry Pressner, informed the Commission that the company intended to export the attached rattles to Venezuela, but said that it would not do so until this Court lifts the attachment order and permits the export. Claimant's Exhibit E. At that time, claimant also marked the rattles for export, to the extent that it was able to do so under the attachment order. *Id.*

## II. *Conclusions of Law*

The first question presented is whether the seized rattles fall within the scope of the FHSA and the rattle regulations promulgated under that statute. The Act includes in its definition of a hazardous substance, "[a]ny toy or other article intended for use by children which the Commission by regulation determines ... presents an electrical, mechanical, or thermal hazard." 15 U.S.C. § 1261(f)(1)(D) (1985). Toys or other articles intended for use by children that are hazardous substances under the Act are automatically banned from interstate commerce. *Id.* §§ 1261(q)(1)(A), 1263(a).[5]

The rattle regulations, promulgated under the authority of 15 U.S.C. § 1262(e), define a rattle as "an infant's toy intended

---

**2.** In an affidavit, Jerry Pressner, President of claimant, said that the shipments were stopped in January 1983 "pending the outcome of this proceeding." J. Pressner Affidavit, at 2. At trial, however, he testified that claimant agreed to stop selling the rattles and did stop regular shipments of defendant rattles in December 1982. Tr. 63. The discrepancy would be significant only if it altered the number of shipments that were made even after the date when claimant agreed to stop selling the rattles. However, because the parties agree that there were four such shipments, I find it unnecessary to determine the exact date on which claimant originally agreed to cease distributing the rattles.

**3.** As will be discussed *infra,* claimant seeks relief from the seizure under 15 U.S.C. § 1265(c), which exempts hazardous substances intended for export. Under the CPSC's "Statement of policy and interpretation" of the FHSA, claim-

ant must show that defendants were not moved or offered for sale in domestic commerce in order to qualify for the exemption.

**4.** Mr. Pressner testified at trial that model no. 03456 was deleted from the "Toy" Section of either the 1983 or 1984 catalog of his firm. Tr. 64. His testimony is not clear on whether the rattle was dropped from the 1983 or 1984 catalogs, or both. He did not produce the catalogs for either year.

**5.** An exception is made, however, for hazardous substances shipped for export, so long as they are appropriately labeled, 15 U.S.C. § 1264(b), and so long as the shipper files a statement of intention to export with the CPSC no less than 30 days before the export. 15 U.S.C. § 1273(d). Failure to file such a statement is a "prohibited act" under 15 U.S.C. § 1263(i).

to be hand held, usually containing pellets or other small objects and which produces sounds when shaken." 16 C.F.R. § 1510.2 (1985).[6] The regulations were based on the results of investigations by the CPSC and the Canadian Consumer Commission into choking incidents among infants. Background Information to Proposed Rule, 42 Fed.Reg. 59,511 (1977). Some of these incidents were caused by "layette" and "tie-on" rattles used to decorate gifts. Tr. 6–7.

After concluding that rattles of certain sizes and designs could be sucked into and lodge in an infant's throat, thus causing choking or suffocation, the CPSC established size limits for rattles sold in the marketplace. Under 16 C.F.R. § 1510.3, a rattle that enters and penetrates the full depth of the oval cavity of a rattle test fixture fails to meet CPSC standards.[7]

The CPSC found that the rattles most commonly associated with injuries were approximately four inches long and shaped like telephone receivers, barbells, clothespins, and safety pins, as well as the traditional lollipop design. Background Information to Proposed Rule, 42 Fed.Reg. 59,-511 (1977). In its final rule, however, the Commission did not limit the scope of the regulations to the previously identified sizes and shapes because it concluded that rattles of different shapes and sizes posed identical hazards. 43 Fed.Reg. 22,004 (1978). In August 1983, the CPSC issued a Consumer Product Safety Alert warning that rattles sold as novelty items posed choking hazards and that distributors had been advised that they were banned hazardous substances under the Act. Plaintiff's Exhibit 13. The warning, which urged consumers to destroy all such rattles in their possession, illustrated three types of rattles ranging between 2½ and 4½ inches in length. One of the rattles depict-

ed in the warning appears to be identical to defendant model no. 56896.

Claimant does not dispute that the two seized models penetrate the rattle test fixture and therefore do not comply with the regulations. It argues, instead, that the regulations are not applicable because they cover only infants' toys and exclude items not "commonly understood" to be rattles. Claimant's Proposed Conclusions of Law, ¶ 3. Claimant contends that defendant rattles are not toys intended to be used by children but party favors or decorations meant for use as package tie-ons or to decorate cakes, corsages, and petit-fours. Claimant's Proposed Findings of Fact, ¶ 4. Claimant says that it has never sold the rattles directly to toy stores. Id. ¶ 5. Neither has it received any complaints alleging that what it has sold as party favors or decorations have been used as rattles or have caused injuries to infants. Id. ¶ 7. Moreover, claimant notes, the CPSC cannot state that there have been any injuries associated with the particular rattles claimant distributes. Id. Stipulation of parties, ¶ 1; see also Tr. 17–18. Therefore, Pressner concludes, the rattles are not used as toys by children. Claimant's Proposed Conclusions of Law, ¶ 5.

■ Finally, according to the claimant, the determination whether objects are "toys intended to be used by children" for purposes of the FHSA should be governed by the manufacturer's intent. Id. ¶ 4. That is, objects are not toys or other articles intended for use by children if the person or entity who put them into commerce did not intend, based on his knowledge of the marketplace and the objects' foreseeable use, that they would be used as toys or otherwise used by children. Claimant therefore argues that because it intended defendant rattles to be used only as

---

**6.** The regulations presuppose that the product category "'rattle' has a commonly understood definition," 43 Fed.Reg. 22,002, 22,003 (May 23, 1978), and therefore exclude from coverage other noise-making toys such as dolls, stuffed animals, plastic keys, and musical instruments

such as tambourines, castanets, and maracas. 16 C.F.R. § 1510.2.

**7.** The rattle test fixture is described in 16 C.F.R. § 1510.3. The cavity's dimensions are 50 mm

party favors, etc., they do not fall within the scope of the regulations.[8]

Assuming the validity of claimant's contention, its catalog advertisement of one of the rattle models in the "Toy" section indicates that claimant intended at least in part to market defendants as toys. More damaging to claimant's argument, however, is the language of the FHSA itself, which nowhere speaks specifically of the *manufacturer's* subjective intent. Instead, the FHSA merely defines a hazardous sub-

stance as "[a]ny toy or other article intended for use by children" which are found by the Commission to present electrical, mechanical or thermal dangers that make them hazardous to children. 15 U.S.C. § 1261(f)(1)(D). The only rational interpretation of the word "intended" in the statute calls for an objective test of intent: whether a reasonable person would believe that the object is a toy or article intended for use by children. Under such a test, the defendant rattles must be considered toys or articles intended for use by children.[9]

× 35 mm × 30 mm. The testing procedure is set forth in 16 C.F.R. § 1510.4.

**8.** Claimant relies on *United States v. An Article of Hazardous Substance Consisting of an Undetermined Quantity of Banned Dolls*, No. 74–1184 DNW (C.D.Cal. Sept. 18, 1974) (transcript of oral decision issued from the bench), in which the district court denied the government's request that certain dolls, which had been seized by the CPSC on the ground that they presented a "mechanical hazard" under 15 U.S.C. § 1261(f)(1)(D), be condemned.

The court concluded that the dolls, which were advertised as "boudoir" or "bed" or "standing" dolls, and whose garments were held fast to their bodies with straight pins, were not intended for children within the meaning of the FHSA and the regulations interpreting the Act. The court based its conclusion on a finding that the dolls had no moving parts, did not bend or cry, and could not be dressed or undressed—could not, in other words, be handled as a child between the ages of 2 and 8 would expect to use a doll.

Further, the court assumed that by "intention," the regulations meant the intention of the manufacturer or distributor, based on his business experience and knowledge of the marketplace. Because there was no evidence that any of the seized dolls had been sold to toy stores, displayed in advertisements and catalogs next to children, nor was there any evidence that children had been injured while playing with the dolls, the court found that the claimant had no intention that the dolls would ultimately be used by children.

Even if we were to accept the assumption, never explained by the *Banned Dolls* court, that the manufacturer's intention should govern, this case is distinguishable. Unlike the dolls, rattles are the subject of specific regulations under the FHSA. Whereas the *Banned Dolls* court was construing the statutory meaning of "mechanical hazard" and found that the Act was "inartfully drafted," and therefore not readily applicable to the seized dolls, the CPSC has already determined that rattles of a certain size present a mechanical hazard within the meaning of the Act. Moreover, because the rattle regulations

were promulgated under the Commission's authority to determine what toys are hazardous to children, rattles are presumptively "toys intended for use by children." Finally, nowhere do the rattle regulations mention the manufacturer's or distributor's subjective intent. Instead, they establish an objective test. Their criteria for compliance are unambiguous: penetration of the rattle test fixture constitutes a violation of the regulations.

**9.** Even if I were to accept the validity of a subjective definition of the phrase "intended for use by children," I must disagree with the reasoning in *Banned Dolls, supra*, which inferred a lack of such intention on the claimant's part from the fact that there were no reported injuries to children.

Reports of injuries would only confirm what a reasonable manufacturer or distributor of party favors resembling rattles should have foreseen at the outset, namely, that they would be given to infants. Expert testimony established that parents would regard defendants as rattles, Tr. 31 (Dr. Nathan Fox), and that an infant of two months not only could hold a rattle of this size but also would be likely to put it in his or her mouth. Tr. 24–25 (infants learn about the world by "mouthing"). Claimant knew that the heart-shaped model was used on babies' shoes, Tr. 50, and that both types of rattles were given as gifts at baby showers. Tr. 58. It also knew that some of its retail customers sold the rattles directly to consumers. Thus, claimant could not reasonably have ignored the possibility that children would use the rattles, regardless of whether he intended such use of the rattles and whether reasonably prudent parents would give such objects to their children. *See* Tr. 31. If all adults were "reasonably prudent," there would be no need for these regulations. Permitting a manufacturer to claim its "intent" is that the product will not be used as a toy, despite evidence of its use as a toy and a common sense observation that children would be likely to use it as a toy, would thwart the purpose of the FHSA and regulations. For all these reasons, a subjective standard for "intent" is essentially unworkable.

The subjective interpretation of intent urged by claimant could seriously diminish the effectiveness of FHSA because it would enable a manufacturer to introduce dangerous articles into commerce on the unreasonable but good faith belief that the articles would not be used by children. Such a result could not possibly comport with the intent of Congress in enacting the FHSA.

 This conclusion is confirmed by the CPSC regulations. In promulgating the regulations at 16 C.F.R. Pt. 1510, the CPSC has determined that objects like defendants here fall within the scope of the FHSA. Because these objects look and sound like rattles, they may be given to children to play with, and therefore pose the dangers of choking and suffocation which the regulations seek to avoid. Tr. 13 (testimony of Christine Nelson, CPSC compliance officer). Moreover, these hazards are beyond the ability of the manufacturer or distributor to control. In warning consumers about the dangers of party favor rattles, the CPSC considered the likely hazard to children irrespective of the intent of the entity that put the rattles into commerce. Any other construction of the authority granted to the Commission under the Act would violate its purpose of protecting the public from hazardous substances, whatever their source. Because the interpretation of a statute by the agency charged with its administration is generally accorded "great deference," *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), I see no reason to disturb the CPSC's judgment that defendants are "toys or other articles intended for use by children," 15 U.S.C. § 1261(f)(1)(D),

and therefore subject to regulation under the FHSA.

 Having concluded that defendants are "rattles" within the meaning of the FHSA and its regulations, I must next consider whether defendants violate the applicable standards. This issue is not contested. Tr. 43. Both plaintiff and claimant agree that because defendants penetrate the full depth of the rattle test fixture, 16 C.F.R. § 1510.4, they are not in compliance with the regulations. Accordingly, I conclude that defendants are "banned hazardous substances" under the FHSA. 15 U.S.C. § 1261(q)(1)(A).

 The second issue before the court is whether, as claimant urges, the rattles may be exported, even though they are banned from domestic interstate commerce. The FHSA makes the introduction of a banned hazardous substance into interstate commerce a "prohibited act," 15 U.S.C. § 1263(a), punishable by a fine or imprisonment, *id.* § 1264(a), and subjects the substances to seizure and condemnation. 15 U.S.C. § 1265(a). However, the FHSA exempts these substances from seizure and condemnation if they are intended for export. *Id.*[10] Under amendments passed in 1978, the FHSA further requires that the exporter notify the CPSC of its intention to export such substances not less than 30 days before export, so that the Commission may inform the foreign government why the items do not comply with the FHSA and hence are barred from sale in this country. 15 U.S.C. § 1273(d); 16 C.F.R. § 1019. The FHSA's penalty provisions provide a similar exemption to persons who ship hazardous substances for export. 15 U.S.C. § 1264.[11] However, that exemption

---

**10.** A banned hazardous substance intended for export to any foreign country qualifies for this exemption under the FHSA if it

 (1) is in a package branded in accordance with the specifications of the foreign purchaser, (2) is labeled in accordance with the laws of the foreign country, and (3) is labeled on the outside of the shipping package to show that it is intended for export, and (4) is so exported.

15 U.S.C. § 1265(a).

**11.** Section 1264(b) provides:

No person shall be subject to the penalties of subsection (a) of this section ... for having violated subsection (a) or (c) of section 1263 of this title with respect to any hazardous substances shipped or delivered for shipment for export to any foreign country, in a package marked for export on the outside of the shipping container and labeled in accordance with the specifications of the foreign purchaser and in accordance with the laws of the foreign country, but if such hazardous substance is sold or offered for sale in domestic

does not apply "if such hazardous substance [was] sold or offered for sale in domestic commerce." *Id.*

Claimant does not deny that it shipped rattles in interstate commerce after the Commission informed it that the rattles were banned hazardous substances. Tr. 59. It is fair to conclude, both from these sales and from the advertisement in claimant's catalog, that defendant rattles were sold or offered for domestic sale. In addition, claimant concedes that it did not inform the Commission in advance of its shipment to Aruba in April 1983. Tr. 66–67. It acknowledges that it first notified the CPSC of its intention to export defendants in May 1984, after they had been seized and this action commenced. Stipulation of parties, ¶ 2.

Nevertheless, claimant argues that the Act is silent on when the intention to export must arise and therefore does not preclude exportation of the banned rattles.[12] Claimant asks this Court to adopt, for noncomplying products under the FHSA, the export policy recently established for products under the Flammable Fabrics Act (FFA), which is also administered by the CPSC. The FFA policy permits the export of noncomplying products even if they have been distributed, sold, or offered for sale in domestic commerce. *In re Imperial Carpet Mills, Inc.,* CPSC No. 80–2 (July 7, 1983); 49 Fed.Reg. 39,669 (Oct. 10, 1984) (revoking 16 C.F.R. Pt. 1602).

Apart from the fact that claimant has committed two prohibited acts under the FHSA,[13] the Commission's recently affirmed policy statement on the export of products that do not comply with regulations under the FHSA squarely precludes the relief claimant seeks. In May 1984, the Commission voted to continue its ban against the exportation of noncomplying, misbranded, and banned products subject to regulation under the Consumer Products Safety Act (CPSA) and FHSA. 49 Fed. Reg. 39667 (Oct. 10, 1984) (codified at 16 C.F.R. Pt. 1010).[14] The policy applies only to products that are the subject of consumer product safety standards or banning rules under the CPSA, and to "misbranded" and "banned" hazardous substances as defined in the FHSA. 16 C.F.R. § 1010.-1(b)(1), (3). Under the policy statement, if any of these banned substances are sold or

commerce or if the Consumer Product Safety Commission determines that exportation of such substance presents an unreasonable risk of injury to persons residing within the United States, this clause shall not apply.

**12.** Claimant offers no statutory support for this view. The only provision of the Act that might arguably permit claimant's reading is § 1265(c), which gives a court, after entering a decree of condemnation, discretion to "direct that such hazardous substance be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of this chapter...." 15 U.S.C. § 1265(c). This section could be read as allowing return of a banned hazardous substance to the distributor in order to bring it into compliance with the Act's export rules. However, such an order would lead to the anomalous result of extending relief to claimants who have sold or offered hazardous substances in domestic commerce, when § 1264(b)(3) expressly denies them that relief under the export exemptions to the penalty provisions. Because the language of § 1265(c) is discretionary, and because construing it in the way that claimant appears to suggest would clearly conflict with the penalty provisions of section 1264(b), I do

not interpret "compliance" in § 1265(c) to mean compliance with the FHSA's export rules.

**13.** Under 15 U.S.C. § 1263(a), the introduction into interstate commerce of a banned hazardous substance is a prohibited act. Failure to notify the CPSC of intention to export pursuant to 15 U.S.C. § 1273(d) is also a prohibited act. 15 U.S.C. § 1263(i). The FHSA specifies penalties for such acts:

Any person who violates any of the provisions of section 1263 of this title shall be guilty of a misdemeanor and shall on conviction thereof be subject to a fine of not more than $500 or to imprisonment for not more than ninety days, or both....
15 U.S.C. § 1264(a).

**14.** The policy statement reads in pertinent part:
(b) In its enforcement of the Federal Hazardous Substances Act, the Commission interprets the provisions of the Act to prohibit the export of products which are misbranded hazardous substances or banned hazardous substances as those items are used in the Act if those products have at any time been sold or offered for sale in domestic commerce.
16 C.F.R. § 1010(b).

offered for sale at any time in domestic commerce, they may not be exported. *Id.* § 1010.1(b)(2), (4).

The Commission's policy statement is a reasoned interpretation of the language of the FHSA. It is consistent with the intent of Congress as expressed in § 1264(b). It supports the goals of encouraging domestic manufacturers and distributors to market only products that comply with the regulations under the FHSA and of preventing the re-introduction into domestic commerce of non-complying products. It is expressly limited to products that are regulated under the FHSA and designated as misbranded or banned hazardous substances. Because rattles are specifically regulated under the FHSA, and non-complying rattles are deemed to be banned hazardous substances, 15 U.S.C. § 1261(q)(1)(A); 16 C.F.R. Pt. 1510, the export policy clearly applies to defendants if they were sold or offered for sale in domestic commerce at any time. Claimant concedes that it did sell the rattles both within and outside the continental United States and I have found that these rattles were offered for sale in domestic commerce. Claimant is not, therefore, entitled to any of the exemptions under the Act for products intended for export. Accordingly, the rattles must be, and hereby are, condemned.

As noted above, the FHSA provides that after a decree of condemnation, the banned hazardous substances may be either destroyed or returned to the claimant for destruction or to bring them into compliance. 15 U.S.C. § 1265(c). Because claimant has not shown how it could make defendant rattles comply with the regulations, I order that the rattles be destroyed.

SO ORDERED.