UNITED STATES of America, Plaintiff,

v.

Charles FOCHT, an individual, and Mark Focht, an individual, doing business under the name Liberty Industries, Defendants.

Civ. A. No. 88–1217.

United States District Court,
W.D. Pennsylvania.

Sept. 26, 1988.

Barbara Carlin, Asst. U.S. Atty., for plaintiff.

Louis Pomerico, New Castle, Pa., for defendants.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before the Court is plaintiff's Motion for a Preliminary Injunction. On September 13, 1988, we conducted a hearing on plaintiff's motion and consolidated the trial on the merits with said hearing pursuant to Federal Rule of Civil Procedure 65(a)(2). For the reasons set forth below, we will deny plaintiff's motion and enter judgment for the defendants.

## I. BACKGROUND/FACTS

The facts underlying this controversy are not in dispute; the parties disagree over the application of the law to those facts.

The plaintiff, United States of America, acting on behalf of the Consumer Product Safety Commission (the "Commission"), brought this action to enjoin defendants, Charles Focht and Mark Focht, doing business as Liberty Industries ("Liberty"), from violating the Federal Hazardous Substances Act (the "Act"), 15 U.S.C. § 1261 et. seq.

The Commission is an independent federal agency established pursuant to 15 U.S.C. § 2053, and charged pursuant to 15 U.S.C. § 2079(a) with the administration of the Act. This Court has jurisdiction pursuant to 28 U.S.C. § 1337 and § 1345. Venue in this district is proper under 28 U.S.C. § 1391(b).

The defendants operate Liberty in Slippery Rock, Pennsylvania. Liberty is a mail order business engaged in the sale of paper and plastic fireworks components, including paper containers, plastic shells, plastic bases, fuses, end glue, spiral and parallel wound cardboard tubes, cardboard end plugs, and cardboard end discs. Liberty sells these items individually and in kit form. Liberty does not sell the chemicals which make up the pyrotechnic composition in completed fireworks, nor does Liberty sell manufactured fireworks of any kind.

Liberty grosses approximately $30,000 per year from the sale of the components to customers both inside and outside the Commonwealth of Pennsylvania. Liberty delivers its orders in interstate commerce via United Parcel Service.

On April 27, 1987, defendants delivered tubes, end plugs and fuses to Sidney C. Englander, an employee of the Commission, in Louisiana. On April 28, 1987, the defendants delivered tubes, end plugs and fuses to Joseph Kawecki, an employee of the Commission, in Illinois. On April 30, 1987, the defendants delivered tubes, end plugs and fuses to Dennis Donath, an employee of the Commission, in Wisconsin. On May 8, 1987, the defendants delivered tubes, end plugs, safety fuses, a sales order sheet and an order form to DuWayne A. Kapelis, an employee of the Commission, in Ohio. On June 10, 1987, the defendants delivered tubes and end plugs in interstate commerce to Gilbert Bodin, an employee of the Commission, in New Jersey.

## II. THE LAW ON PRELIMINARY INJUNCTIONS

Pursuant to Section 8(a) of the Act, United States district courts have jurisdiction to restrain violations of the Act where cause is shown and Rule 65(a) and (b) of the Federal Rules of Civil Procedure are met. 15 U.S.C. § 1267(a).

█ Because the government has instituted this action under a statutory provi-

sion, the government need only demonstrate two elements in order to obtain an injunction; (1) that a violation of the statute has occurred, and (2) that there exists a reasonable likelihood of recurrent violations. *See United States v. Nutrition Service, Inc.,* 227 F.Supp. 375, 388–90 (W.D. Pa.1964), *aff'd* 347 F.2d 233 (3rd Cir.1965); *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). The government is not required to show irreparable injury or the inadequacy of other remedies as a prerequisite to the issuance of the injunction. *Commodity Futures Trading Commission v. British American Commodity Options Corp.,* 560 F.2d 135, 141 (2nd Cir.1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978). Congress itself has balanced the equities and determined that a violation of the statute is itself sufficient public injury to justify issuance of an injunction. *United States v. City and County of San Francisco,* 310 U.S. 16, 30–31, 60 S.Ct. 749, 756–757, 84 L.Ed. 1050 (1940).

## III. ANALYSIS

■ The issue before the Court is whether, as a matter of law, the defendants are violating the Act by introducing paper containers, plastic shells, plastic bases, fuses, end glue, spiral and parallel wound cardboard tubes, cardboard end plugs, and cardboard end discs into interstate commerce. This issue is apparently one of first impression; we could find no decision in any jurisdiction addressing it.

Section 4 of the Act provides that one is prohibited from delivering into interstate commerce any banned hazardous substance. 15 U.S.C. § 1263. Pursuant to its regulatory authority, *see* 15 U.S.C. § 1261(q)(1)(B), the Commission has declared certain items to be banned hazardous substances because "they possess such a degree or nature of hazard that adequate cautionary labeling cannot be written and the public health and safety can be served only by keeping such articles out of interstate commerce." 16 C.F.R. § 1500.17(a).

The Commission has deemed as "banned substances" certain fireworks devices that explode in the air; they are defined as follows:

(3) Fireworks devices intended to produce audible effects (including but not limited to cherry bombs, M–80 salutes, silver salutes, and other large firecrackers, aerial bombs, and other fireworks designed to produce audible effects, and including kits and components intended to produce such fireworks) if the audible effect is produced by a charge of more than 2 grains of pyrotechnic composition.

15 C.F.R. § 1500.17(a)(3).

Thus, an aerial firework, and any component intended to produce such firework, which produces an audible sound and which sound is produced by more than 2 grains of pyrotechnic composition is a banned substance.

The Commission has also deemed as "banned substances" certain fireworks devices that are designed for use on the ground; these are defined as follows:

(8) Firecrackers designed to produce audible effects, if the audible effect is produced by a charge of more than 50 milligrams (.772 grains) of pyrotechnic composition (not including firecrackers included as components of a rocket), aerial bombs, and devices that may be confused with candy or other foods, such as "dragon eggs" and "cracker balls" (also known as "ball-type caps"), and including kits and components intended to produce such fireworks.

17 C.F.R. § 1500.17(a)(8).

Thus, a ground firework, and any component intended to produce such firework, which produces an audible sound and which sound is produced by more than 50 milligrams of pyrotechnic composition is a banned substance.

The government contends that the items sold by defendants are themselves banned substances because they are components intended to be used in banned fireworks, arguing that the defendants are violating 15 U.S.C. § 1263(a) by introducing into interstate commerce firework components

that are banned under 16 C.F.R. § 1500.17(a)(3) and (a)(8). The government further asserts that the items that the defendants sell are components intended to produce banned fireworks in that (1) the dimensions and wall thickness of the tubes are such that one would have to use more pyrotechnic composition than permitted by the regulations in order to get them to explode, and (2) orders of tubes, end plugs, and fuses without an accompanying order of mortar bases indicate that customers are using these components to produce banned fireworks.

We first conclude that the items sold by defendants are not in themselves necessarily components of banned fireworks.

There is no question that someone could purchase the items defendants sell and, in combination with the proper chemicals, produce banned fireworks devices; one need only use an excessive amount of pyrotechnic composition in a firework to produce a banned device.

However, these same items can be used to produce legal fireworks. At the hearing, the government presented the testimony of Donald McCaulley, a retired Commission chemist and pyrotechnic expert. Mr. McCaulley testified that he had conducted a test with # 12 spiral wound tubes sold by the defendants. He stated that when constructed in the manner standard in the fireworks industry, i.e. the tube being filled ¾ full with pyrotechnic composition and with the end plugs capping the tube at both ends of the tube, the # 12 tube firework device held 66 grams of pyrotechnic composition which is over 1000 times the legal limit. He testified that the tube was of such size and strength that it would not explode with less than 50 milligrams of composition if the firework was constructed in the standard manner.

On cross-examination, however, Mr. McCaulley conceded (1) that a # 12 tube would explode with 50 milligrams or less of pyrotechnic composition if the end plugs were positioned towards the center of the tube, (2) that the same # 12 tube could be used as a mortar from which stars or other firework devices could be propelled, and (3) that a customer purchasing tubes, bases, and other components from defendants could use these items to make legal Class C fireworks which are sold to the general public.

Mr. McCaulley's concessions were supported by defendants' pyrotechnic expert, Robert Winokur. Mr. Winokur stated that the tubes sold by defendants could be legally used as mortars or used in the construction of "birthday cake" firework devices, smoke devices, roman candles, whistles, or any other multi-tube firework device.

The government argued that the fact that some customers did not order mortar bases was evidence that their intent was to manufacture banned fireworks. Mr. Winokur testified that any one can make their own mortar bases out of scrap lumber, thereby saving some money.

After consideration of the expert testimony and our own analysis of the numerous firework component exhibits submitted by the parties, we must conclude that the items sold by the defendants can be used to construct firework devices that are not banned by the Act. They can be used to make firework devices that produce an audible effect created by the legal limit of pyrotechnic composition, or they can be used to make a multitude of legal visual effect firework devices. Thus, while the items sold by the defendants may be used as components for banned fireworks, this is not necessarily the case.

The government contends that the items sold by the defendants are banned substances because they are components "intended to be used" in banned fireworks by defendants' customers. In support of this contention, Mr. McCaulley testified that, based on his experience, 90% of those individuals who order a tube, 2 end caps, and a fuse or who order similar proportions of these items in quantity, will use these items to make illegal fireworks.

■ While some or even a great number of defendants' customers may use defendants' products to construct illegal fireworks, we cannot conclude, and the government did not offer any evidence to show, that all of defendants' customers purchase these products with the intent of producing banned fireworks. We hold that such a

conclusion is a requisite to a finding that the items sold by defendants are components intended to be used in banned fireworks.

There is only one person who knows with certainty that a given tube or end cap will be a component of a banned firework, the person actually constructing the firework, not the seller of the component. Neither the plaintiff nor the defendants can know whether or not a given order of fireworks components, which can be used to construct both legal and banned fireworks, is intended to be used for banned fireworks.

The government is asking both this Court and the defendants to read the minds of Liberty's customers; we are supposed to determine, on the basis of the components ordered, which customers intend to make banned fireworks. This is an impossible task. It is equally unrealistic to require the defendants to examine each order and then guess whether a customer will make legal or banned firework devices.

While the Commission's regulations ban "components intended to produce" banned fireworks, the phrase "components intended to produce" is not defined and likely cannot be. Where a given ·item can be used to make either a legal or a banned product, and the intent may be determined solely from the conduct of the purchaser of the product, it would be impossible for anyone (except the purchaser) to objectively evaluate that item and conclusively determine whether it is a "component intended to produce" a banned firework.

The items sold by the defendants may eventually be used to make banned fireworks devices, but they do not become components of a banned device until they are actually used in the construction of such a device. It cannot be the defendants' responsibility to investigate the unstated intentions of every customer and to police their subsequent conduct.

We understand the laudable purposes of the Act, the Regulations and the Commission. Fireworks are dangerous; each year there are deaths and injuries caused both by legal and illegal fireworks. The method attempted here to control the situation, however, is simply not fair. The direction of government must be to go after the consumers who are violating the law, rather than the sellers of components which may be used for legal as well as illegal purposes.

We conclude that the paper containers, plastic shells, plastic bases, fuses, end glue, spiral and parallel wound cardboard tubes, cardboard end plugs, and cardboard end discs sold by defendants are not banned hazardous substances under the Act, and the Commission's regulations. Consequently, defendants' distribution of such items is not a violation of the Act. Accordingly, we will deny plaintiff's motion for a preliminary injunction and will enter judgment for the defendants.

An appropriate Order will issue.