**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Charles FOCHT, an Individual, and Mark Focht, an Individual, Doing Business Under the Name Liberty Industries, Defendants–Appellees.**

No. 88–3781.

United States Court of Appeals, Third Circuit.

Argued July 27, 1989.

Decided Aug. 8, 1989.

---

--

Charles D. Sheehy, Acting U.S. Atty., Bonnie R. Schlueter (Argued), Barbara M. Carlin, Asst. U.S. Attys., for plaintiff-appellant.

Louis Pomerico, (Argued), New Castle, Pa., Nancilee Burzachechi, Ellwood City, Pa., for defendants-appellees.

* Honorable Lowell A. Reed, Jr., District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

1. These parts include paper containers, plastic shells, bases, fuses, end glue, spiral wound tubes, and end plugs.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge, and REED, District Judge.*

## OPINION OF THE COURT

GIBBONS, Chief Judge:

The United States Consumer Products Safety Commission appeals from a denial of its motion to the court under 15 U.S.C. § 1263(a) to preliminarily enjoin Charles and Mark Focht, doing business as Liberty Industries, from distributing firework components in interstate commerce. The Government contends that the district court misconstrued the statute to require application of a subjective standard to the Fochts' actions. We will reverse.

## I.

Charles and Mark Focht own and operate Liberty Industries, located in Slippery Rock, Pennsylvania. Liberty sells component parts used to assemble fireworks.[1] Liberty markets its goods nationally using a catalog. The catalog not only lists Liberty's components but also offers "how-to" books[2] and is sent with a list of chemical suppliers bearing the note: "We hope this list helps you to fill your chemical needs, while Liberty continues to serve all of your other needs!" App. 168, 268.[3]

The Consumer Product Safety Commission ("CPSC") began to investigate Liberty in March, 1987. Between March and July of that year, five CPSC employees from various parts of the country requested and received catalogs from Liberty. The catalogs contained referral cards to Chemco of Virginia. App. 272–73, 338–39, 379–82, 441–42, 483–84. Six CPSC employees then each placed an order for tubes, twice as many end plugs, and fuses. App. 289, 318,

2. These books are: *The Chemistry of Powder and Explosives, Fireworks Principles and Practice,* and *Pyrotechnics,* App. 264.

3. Under previous ownership, Liberty sold the chemical, as well as the structural, components of fireworks. App. 162; *see* App. 265.

365, 425, 458, 517. Liberty filled the orders.[4]

Based on the sales to its employees,[5] the government filed a complaint against Liberty on May 27, 1988 seeking to enjoin Liberty's interstate sale of tubes, end plugs, and fuses.[6] The complaint theorizes that the sales violated 15 U.S.C. § 1261 because the components shipped were intended for use in illegal fireworks. It raises a question of first impression.

The district court held a hearing on the motion on September 13, 1988. There the government introduced the testimony of two experts; Liberty presented the testimony of one. All three agreed that traditional filling of the number 12 tube sold by Liberty would result in a firework over 1,000 times more powerful than allowed by law. The government witness conceded that the same tube also could be used to assemble a less powerful firework by displacing the end plugs. He also testified that the components could be used to manufacture legitimate Class C fireworks, which are sold to the general public. Both sides agreed that the tubes also could be used to construct mortars to loft stars or other fireworks, another legitimate use.[7] After the hearing, the district court consolidated the government's requests for preliminary and permanent injunctions pursuant to Fed.R.Civ.P. 65(a).

The court rendered its decision in a memorandum opinion and order entered September 26, 1988. *United States v. Focht*, 694 F.Supp. 1199 (W.D.Pa.1988) [hereinafter *Dist. Ct. Op.*]. It found that the components could be used to assemble legal firecrackers and fireworks. Therefore, the

goods per se did not violate the Act. Holding that the regulatory language prohibiting sale of components intended to be used in banned fireworks contemplates the subjective, rather than the objective, intent of the purchaser, the district court denied the government's motion and entered judgment for Liberty. Based on its finding that no statutory violation had occurred, it never examined whether recurrent violations were likely, the second half of the statutory injunction test. *See Commodity Futures Trading Comm'n v. British Am. Commodity Options Corp.*, 560 F.2d 135, 141 (2d Cir.1977), *cert. denied*, 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978). On appeal, the government asserts the district court misconstrued 16 C.F.R. § 1500.17(a)(3), (8) when it held the regulation's "intended to produce" language imposes a subjective consumer standard on sales of fireworks components to determine whether a violation has occurred. Our review of this question of law is plenary. *Dent v. Cunningham*, 786 F.2d 173, 175 (3d Cir.1986).

## II.

The Federal Hazardous Substances Act, ("FHSA" or "the Act"), 15 U.S.C. §§ 1261–77 (1982 & Supp. V 1987), makes illegal "[t]he introduction or delivery for introduction into interstate commerce of any ... banned hazardous substance." 15 U.S.C. § 1263(a) (1982); *see also id.* at § 1264 (penalties; exceptions); *United States v. Scharstein*, 531 F.Supp. 460, 465 (E.D.Ky.1982) (FHSA meant "to protect the general public ... from extremely hazardous products"). Neither the parties nor

---

**4.** Some of the employees' catalog requests and or orders were made after the complaint was filed. App. 351, 365, 518.

**5.** The government brief also includes some facts about an incident involving a fourteen-year-old boy who manufactured banned fireworks in his home using Liberty materials. These events occurred in October 1987, several months after the CPSC filed its complaint.

**6.** Specifically, the government asked the district court to enjoin Liberty from future interstate deliveries of banned substances in violation of 15 U.S.C. § 1263(a), pursuant to 15 U.S.C.

§ 1261(q)(1)(B) and 16 C.F.R. § 1500.17(a)(3), (8); to maintain records of all orders received and all shipments made; to submit a written plan to ensure compliance with section 1263(a); and to permit the CPSC to copy and inspect Liberty's records to monitor compliance. App. 582–83. The government also asked to recover costs, App. 583, and moved for a preliminary injunction.

**7.** Robert Winokur, Liberty's expert also testified the tubes could be used to make any other multitube device, such as "birthday cakes," smoke devices, roman candles, and whistles.

the district court disputes this. The Act contains the following definition of "banned hazardous substance":

(q)(1) The term "banned hazardous substance" means (A) any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted; or (B) any hazardous substance intended, or packaged in a form suitable, for use in the household, which the Secretary by regulation classifies as a "banned hazardous substance" on the basis of a finding that, notwithstanding such cautionary labeling as is or may be required under this chapter for that substance, the degree or nature of the hazard involved in the presence or use of such substance in households is such that the objective of the protection of the public health and safety can be adequately served only by keeping such substance, when so intended or packaged, out of the channels of interstate commerce: *Provided,* That the Secretary, by regulation, ... (ii) shall exempt from clause (A), and provide for the labeling of, common fireworks (including toy paper caps, cone fountains, cylinder fountains, whistles without report, and sparklers) to the extent that he determines that such articles can be adequately labeled to protect the purchasers and users thereof.

15 U.S.C. § 1261(q)(1) (1982).

The statute grants the Secretary of Health, Education, and Welfare broad regulatory powers. *See* 15 U.S.C. §§ 1261(f)(1)(B), 1262 (1982). Section 1261(q)(1)(B) expressly instructs the Secretary to make determinations and then ban[8] any substance that cannot be made safe through labeling. *Id.* § 1261(q)(1)(B); 16 C.F.R. § 1500.17(a) (1988). A ban on two kinds of fireworks has resulted. One applies to aerial fireworks:

Fireworks devices intended to produce audible effects (including but not limited to cherry bombs, M–80 salutes, silver salutes, and other large firecrackers, aerial bombs, and other fireworks designed to produce audible effects, and including kits and components intended to produce such fireworks) if the audible effect is produced by a charge of more than 2 grains of pyrotechnic composition....

16 C.F.R. § 1500.17(a)(3) (1988). The other applies stricter standards to firecrackers exploding on the ground:

Firecrackers designed to produce audible effects, if the audible effect is produced by a charge of more than 50 milligrams (.772 grains) of pyrotechnic composition (not including firecrackers included as components of a rocket), aerial bombs, and devices that may be confused with candy or other foods, such as "dragon eggs," and "cracker balls" (also known as "ball-type caps"), and including kits and components intended to produce such fireworks....

*Id.* at § 1500.17(a)(8). Thus, the "components intended to produce" language at issue is regulatory.

The district court found this language difficult—perhaps even impossible—to construe. *Dist.Ct.Op.* at 8. We have no such difficulty. The regulations clearly contemplate an objective seller standard.

The starting point of our analysis must be the regulatory language itself. Pursuant to 15 U.S.C. § 1261(q)(1)(B). Section 1500.17 bans certain hazardous substances because they are so dangerous that adequate labeling cannot be devised, and therefore "the public health and safety can be served only by keeping such articles out of interstate commerce." 16 C.F.R. § 1500.17(a) (1988); *see R.B. Jarts, Inc. v. Richardson,* 438 F.2d 846, 848–49 (2d Cir. 1981), *United States v. Chalaire,* 316

---

**8.** The Fochts contend that only the legislature can impose an absolute ban on materials used as components of fireworks. This argument fails, both because Congress expressly empowered and instructed the Secretary to ban substances (s)he determines to be hazardous under the guidelines set forth by Congress, and because the regulation does not prohibit all Liberty sales. Instead it forbids only shipment in interstate commerce of those components intended to produce banned fireworks.

F.Supp. 543, 546 (E.D.La.1982).[9] The regulation borrows this quoted material almost verbatim from section 1261(q)(1)(B).

This language tells us three things. First, it tells us the regulation prohibits certain substances from *entry* into interstate commerce. Second it tells us that an extreme problem, justifying an extreme response, exists. Third, it tells us that Congress expressly authorized such a response. *See* 15 U.S.C. § 1261(q)(1)(B) (1982); *see also* H.R.Rep. No. 2166, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong. & Admin.News 4095, 4095, 4096, 4099–4100.

Subsections (a)(3) and (a)(8) each bans a particular type of firework, "including kits and components intended to produce such fireworks." 16 C.F.R. § 1500.17(a)(3), (8) (1988). Taken in context, this language calls for application of an objective seller standard. Congress intended the ban to keep certain items out of commerce; it intended the ban to prevent such goods from ever entering American homes. 15 C.F.R. § 1261(q)(1)(B) (1982). The regulations adopt the statutory language and attempt to effectuate its purpose. *See* 16 C.F.R. § 1500.17(a) (1988). They identify an item posing a certain type of danger, and then insert catch-all language to trap components or kits that will have the same effect.

The district court reached the unnecessary conclusion that the components, with their multitudinous possible legal uses per se were not banned hazardous substances. This is clear from the regulations' wording, which bans components *only* when their intended use is to produce banned fireworks. Still, the Fochts attempt to build on this finding by stating that their harmless paper and plastic products could not be deemed hazardous under any test. Case law has shown that even the most innocuous items may be converted into dangerous instrumentalities. *See, e.g., United States v. Morrow,* 717 F.2d 800, 802 (3d Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984) (building as bomb); *United States v. Agrillo–Ladlad,* 675 F.2d 905, 911 (7th Cir.), *cert. denied,* 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982) (newspapers and naptha as bomb).

The district court's subjective consumer standard undermines the statute's purpose because it allows the components into the home and, worse still, requires that they be assembled into a banned firework *before* a violation arises. *See Dist.Ct.Op.* at 8. The only way to meet the congressional goal of preventing these goods from being introduced into the home is to apply an objective standard *at the time of shipment.*

Furthermore, the regulation uses the "intended to produce" language in subsection (a)(3) to describe assembled fireworks. Such usage necessarily contemplates the manufacturer's intent in producing the firework or the seller's intent in marketing it. Thus, a consistent reading would require an objective standard for components as well. In addition, since the regulation uses the components and kits language as a catch-all to snare all shipments that will have the prohibited intended effect, this objective standard also must carry over to the component parts. The district court's reading would allow the pieces to enter, when the whole is banned. This anomalous result cannot stand.

The statute also contains another indication in addition to its general purpose of barring from interstate commerce banned hazardous substances that objective intent should govern. Section 1261(f)(1), which defines "hazardous substance," uses tradi-

---

**9.** The Fochts maintain that their goods neither are intended for children, nor for use in the household. Brief for the Appellees at 12. This court previously has noted the likely combination of children and fireworks. *See Suchomajcz v. Hummel Chem. Co.,* 524 F.2d 19, 26 (3d Cir. 1975). Furthermore, the statute itself treats fireworks as toys. *See* 15 U.S.C. § 1261(q)(1) (1982) (exempting from the § 1261(q)(1)(A) ban any common fireworks to the extent the Secretary deems adequate labels can be devised). It should be noted, however, that the Secretary promulgated the bans on fireworks pursuant to 15 U.S.C. § 1261(q)(1)(B), not pursuant to (q)(1)(A). *See* 16 C.F.R. § 1500.17(a) (1988). Therefore, they ban fireworks that have been deemed a threat to society at large. *Id.* Any focus upon children is misplaced. Since the Fochts ship their products to households, their second argument is disinguous.

tional foreseeability language. 15 U.S.C. § 1261(f)(1)(A) (1982) (defining "hazardous substance" as "[a]ny substance or mixture of substances which ... is flammable or combustible, or ... generates pressure through decomposition, heat, or other means, if [it] may cause substantial personal injury or substantial illness during or as a proximate result of any customary or foreseeable handling or use").[10]

Intended use (including foreseeable misuse, *see, e.g., Suchomajcz v. Hummel Chemical Co.,* 524 F.2d 19 (3d Cir.1975)), objectively defined, necessarily encompasses foreseeability. Thus mitigated, the standard achieves a fair result. Contrary to the district court and the Fochts' position, the test does not cast the statute's net too broadly because surrounding circumstances mitigate the result.

While Liberty's merchandise may be used to construct legal fireworks, the government presented expert testimony that "90% of those individuals who order a tube, 2 end caps, and a fuse or who order similar proportions of these items in quantity, will use these items to make illegal fireworks." *Dist.Ct.Op.* at 7. The same expert testified that if one of the tubes in question were filled in the traditional manner, it would contain over 1,000 times the legal limit of explosive. *Id.* at 5–6. This testimony, accepted by the district court, makes it foreseeable that the components in question will be used to build banned

fireworks. Such knowledge must be attributed to the Fochts. Thus, the objective test, the regulation, and the statutory purpose are satisfied.

Contrary to the district court's opinion, such a test does not work an injustice upon Liberty. First, application of the objective intent standard does not result in a total ban of sales of the goods in question.[11] As the government suggests, Liberty may avoid violation by policing the orders it receives and refusing to fill those that suggest the components will be put to banned uses. Liberty has chosen to traffic in highly regulated goods. It is common knowledge that doing business in a regulated area brings with it added costs. Having chosen to enter such an area, the Fochts cannot now complain about bearing that cost. It is not "unrealistic to require [Liberty] to examine each order" to determine whether the proportions and types of goods ordered likely will be used to produce banned fireworks. *Id.* at 7. They must read the order to fill it. Nor is it unreasonable to expect them to check recent orders by the same customer.[12]

In the alternative, the Fochts simply may stop selling those goods likely to find their way into banned fireworks,[13] or they may limit their sale to licensed manufacturers. Liberty cannot rely on statements by the orderer that he or she is of age and intends to use the goods only for legal purposes to

---

**10.** At least one other court has applied an objective seller standard to an FHSA case. *United States v. Articles of Banned Hazardous Substances,* 614 F.Supp. 226 (E.D.N.Y.1985). The facts of that case required the district court to construe 15 U.S.C. § 1261(f)(1)(D), which defines as a hazardous substance "any toy *intended* for use by children which the Commission by regulation determines ... presents [certain] risk[s]." *Id.* at 229 (emphasis added). It concluded that only an objective standard would advance the goals of the FHSA. *Id.* at 231–32.

**11.** The Fochts analogize their paper and plastic goods to a car—an object that is not inherently dangerous yet may be put to innumerable illegal and unpredictable and unintended uses—to support application of a subjective intent standard. Here, however, the facts sufficiently narrow the possibilities to make the analogy invalid. Liberty advertises its goods as fireworks materials.

Given the dimensions of certain of its products, and the composition of certain orders, illegal uses become extremely predictable. *See infra* at 60.

**12.** This court previously has held that within the specific confines of particular preliminary injunction, shipment of separate components did not violate the injunction. *United States v. Christie Indus., Inc.,* 465 F.2d 1002, 1007 (3d Cir.1972). This holding in no way binds us here.

**13.** After they purchased Liberty, the Fochts wrote to the CPSC for an opinion on the legality of shipping the items listed in their catalog. A CPSC attorney suggested that they delete all the tubes on page 2 and the tubes and bases at the top of page 5, as well as the cherry cup sets, items CS–1 and CS–2. App. 207–09, 256, 258, 261. These deletions appear to leave the Fochts with plenty to market.

evade the statute. *United States v. Christie Indus., Inc.*, 465 F.2d 1002, 1008 (3d Cir.1972). Therefore, imposition of an objective standard strikes a fair balance between the Fochts' business interests and the statutory goals.[14]

In sharp contrast, the district court's rule does violence to the statutory purpose. It would allow the Fochts to ship to homes all the components of illegal fireworks without violating the regulations. A seller's subjective intent standard would provoke the same result: any good faith belief—such as the Fochts' claim here[15]—that their goods would not be used, or were not intended to be used, in banned fireworks would insulate the shipment. *Cf. United States v. Articles of Banned Hazardous Substances*, 614 F.Supp. 226, 232 (E.D.N.Y. 1985).

### III.

The district court denied the government's motion for a preliminary injunction and entered a judgment for the Fochts based on its finding that the challenged goods are not banned hazardous substances. Since we hold that they are, we will reverse the district court's judgment and remand for a determination by the district court whether recurrent violations are likely and what form of injunction is appropriate.

---

14. We do not mean to imply that a balancing of interests is appropriate in an exercise of police power such as this. We merely respond to the district court's express concern that anything but a subjective consumer standard is unfair to the Fochts and others like them.

15. Having conceded the appropriateness of the court's result in *United States v. Articles of Banned Hazardous Substances*, 614 F.Supp. 226 (E.D.N.Y.1985), the Fochts attempt to distinguish the instant case. There, the court applied an objective standard to rattle regulations promulgated pursuant to the Act. Fireworks cases offer a sharp contrast, the Fochts argue, because no reasonable adult intends fireworks to be used by children. This turns the test inside-out. It also ignores the fact that § 1261(q)(1)(B) is not targeted at children alone, but at the general population. *See United States v. Scharstein*, 531 F.Supp. 460, 465 (E.D.Ky.1982); 15 U.S.C. § 1261(q)(1)(B) (1982); H.R.Rep. No. 2166, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 4095, 4095, 4096, 4099–4100.