UNITED STATES of America, Plaintiff,

v.

Victor Forest SCHARSTEIN, et al., Defendants.

Crim. No. 81–21.

United States District Court,
E. D. Kentucky,
Covington Division.

Jan. 22, 1982.

Robert E. Rawlins, Asst. U. S. Atty., Lexington, Ky., for plaintiff.

Charles Schaffner, Covington, Ky., for Victor Scharstein.

Steven R. Jaeger, Covington, Ky., for William Walters.

Hugh Kranitz, St. Joseph, Mo., and Don W. Ziglar, Covington, Ky., for Robert Miller.

Steven E. Starke, Covington, Ky., for Ellen Orta.

A. J. Jolly, Newport, Ky., for David & Terri Herald.

### OPINION and ORDER

BERTELSMAN, District Judge.

This criminal prosecution for illegally manufacturing, storing, and transporting illegal explosives was triggered when a garage in downtown Newport, Kentucky exploded without warning on April 2, 1981. Two young men were killed and some $4,000,000 of property damage occurred over a wide area of the city.

Subsequent investigation by agents of the United States Bureau of Alcohol, Tobacco & Firearms led them to conclude that one of the final stages of an illegal fireworks manufacturing operation, the powdering or loading phase, was being conducted in the garage. Six alleged participants in the illicit business were indicted, all but three pleaded guilty.

The evidence, somewhat synthesized here, tended to show that the defendant Victor Forest Scharstein, ·who did not enter a guilty plea, masterminded a clandestine unlawful fireworks cottage industry involving several phases, culminating in the manufacture and distribution of M–80 and M–100 firecrackers. Scharstein, the evidence showed, would purchase tubes, glue, trays and other paraphernalia necessary to manufacture the fireworks. He would then farm out various stages of the manufacturing function to different individuals, usually to be performed in their homes. The end product was sold to customers in various states.

For example, Scharstein would take a tray of M–80 hollow tubes to a participant's house where the ends would be sealed with glue. He would then pick them up and take them elsewhere to be filled with powder, and finally to another location to be fused.

It was the powdering location that exploded, killing the two individuals engaged in operating it and causing extensive damage over several square blocks, endangering the lives of many innocent citizens.

One of the other defendants who went to trial, William Walters, was alleged to be the business manager of the illicit scheme. The third defendant tried was Robert Miller of DeKalb, Missouri, who was found guilty of conspiring to transport some of the finished product in interstate commerce.[1]

All three defendants were convicted. The court is asked to review certain rulings made during trial on motions for new trial. These are as follows:

**Rule 615—Federal Rules of Evidence**

Rule 615 of the Federal Rules of Evidence reads as follows:

"**Exclusion of Witnesses.** At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."

■ We are here presented with the issue whether, upon request of one of the parties, the court must impose a standard more stringent than that required by the language of the Rule itself and instruct prospective witnesses excluded from the courtroom pursuant to the Rule that, while waiting to testify, they should not discuss the case with other witnesses, who have already testified or who are going to testify.

There is a conflict of authority on this issue. On the one hand, some courts say that for the Rule to be effective, the court should give the more stringent instruction.

---

1. The indictment may be summarized as follows:

The defendants in the present action were all indicted on July 8, 1981, for violating and conspiracy to violate various provisions of 18 U.S.C. § 841 *et seq.* in connection with the defendants' activities regarding manufacturing, storing, and dealing with M–80 and M–100 firecrackers without a license or permit. An appendix of the text of the applicable statutes is attached.

Count I of the indictment charged that the defendants Victor Scharstein, Robert Miller and William Walters conspired to violate: (1) 18 U.S.C. § 842(a)(1), by knowingly engaging in the business of manufacturing and dealing in explosive materials without having been issued a license; (2) 18 U.S.C. § 842(a)(3)(A), by knowingly transporting and shipping and causing to be transported and shipped in interstate commerce explosive materials without being licensees or permittees; and (3) 18 U.S.C. § 842(j), by unlawfully storing explosive materials.

Defendants Scharstein and Walters were further charged under Count II of the indictment with violating 18 U.S.C. §§ 842(a)(1) and 844(a), by knowingly engaging in the business of manufacturing and dealing in explosive materials without having been issued a license under the provisions of 18 U.S.C. § 841–848. Defendant Scharstein was further charged individually under Count III with knowingly transporting and shipping in interstate commerce 50 cases of illegally manufactured M–80 firecrackers in violation of 18 U.S.C. § 842(a)(3)(A) and § 844(a).

Other authorities, however, hold that the matter is within the discretion of the trial court. This court believes that the latter view is to be preferred and hereby adopts it.

Rule 615 by its terms applies to excluding witnesses "so that they cannot *hear* the testimony of other witnesses." (Emphasis supplied). Nevertheless, some courts have felt it necessary to go beyond the language of the Rule. One trial court excluded from evidence the testimony of experts who, although they did not enter the courtroom, had read daily copy of the testimony of other witnesses before testifying themselves. This drastic sanction was upheld by an appellate court.[2]

Perhaps the best expression of the view urged by defendants here is to be found in a leading text on the Federal Rules of Evidence.

"Counsel who believe that sequestration of witnesses will work to the advantage of their clients should make all reasonable efforts to assure that a sequestration order is fully protective. For example, it is not sufficient for counsel simply to ask the Trial Judge to have the witnesses removed from the courtroom when they are not testifying. Counsel should also ask that the Trial Judge instruct the witnesses that they are not to discuss the case with one another. An option worth considering is for counsel to request that the Trial Judge order the lawyers for both sides to fully instruct their witnesses on the purpose of a sequestration order and its effect. An advantage of this procedure is that, if the purpose of the order is frustrated by the actions of the witnesses untrained in the law, sometimes counsel (who should know better) can be held responsible."[3]

With deference to authorities advocating this view, this court believes that there is no reason to go beyond the plain language of the Rule and that it is sounder and more practical to place the question of whether or not to instruct segregated witnesses concerning communications with other witnesses within the discretion of the trial court.[4]

In the view of this court, absolute adherence to the more stringent view involves such practical difficulties as to be for the most part unworkable. In any hard-fought case the parties adjust and revise their strategies as the trial proceeds. As the Supreme Court of the United States has pointed out:

"It is common practice during such [overnight] recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance."[5]

It is also common practice and an essential part of trying a case for the trial attorney to confer with his experts and other prospective witnesses during such recesses, as well as before trial. It has been held that to deprive a party, even a corporate party in a civil case, of the right to consult with counsel as the trial proceeds is to

---

**2.** *Miller v. Universal City Studios*, 650 F.2d 1365, 1372, 1373 (5th Cir. 1981).

**3.** S. Saltzburg & K. Redden, Federal Rules of Evidence Manual, 1981 Supp., p. 187. *Accord:* D. Louisell & C. Mueller, Federal Evidence § 371; *Gregory v. United States*, 369 F.2d 185, 191–92 (D.C.Cir.1966); *United States v. Johnston*, 578 F.2d 1352, 1355 (10th Cir. 1978).

**4.** *United States v. Smith*, 578 F.2d 1227, 1235 (8th Cir. 1978).

**5.** *Geders v. United States*, 425 U.S. 80, 88, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976).

infringe its right to due process of law.[6] This court believes that similar considerations apply to the right of a party to have his counsel free to discuss with prospective witnesses developments in the case, including the testimony of other witnesses.

■ If counsel can relate to a witness what another witness has said, it would seem to be an exercise in futility for the court to try to prohibit one witness from talking to another about the case outside the courtroom. Although the United States in a criminal prosecution may not technically have a right to due process of law, this court believes that fairness requires that it be afforded the same latitude in the interpretation of Rule 615 that due process would afford a corporate defendant.

The express requirement of Rule 615 that prospective witnesses be excluded from the courtroom is an objective, readily enforceable criterion. If a stricter standard is imposed, the court becomes involved in a myriad of enforcement problems and a plethora of collateral issues. In the instant case defendant's counsel reported to the court that the government's prospective witnesses were talking in the hall while waiting to testify. If the more stringent approach were adopted, the court would have to stop the trial and hold an evidentiary hearing every time this occurs, which this court is inclined to believe would not be infrequently.

It is somewhat unrealistic to expect policemen, agents, experts and witnesses who have known each other for years and who have worked together in preparing a case to sit for hours together in a witness room or hall without carrying on some conversation. The court cannot afford to allow itself to be bogged down in numerous inquiries as to the contents of such conversations, where there is no genuine need to do so. A court is ill-advised to issue an order that is impractical to enforce.[7]

In some cases, as where the result turns on fine nuances in the testimony, it may be necessary to take the time and make the effort to enforce the more stringent restrictions. But this was not such a case, and this court believes the intent of the drafters of the Rule was to give the trial court discretion as to the exact means of its implementation over and above its express requirements. If they had meant to adopt a more rigorous approach, they could easily have incorporated it in the text of the Rule. The general approach of the Federal Rules of Evidence is to place heavy reliance on the discretion of the trial court in conducting a fair trial. *See e.g.*, Fed.R.Evi. 403, 611(a). Further, Rule 615 leaves a great deal of room for its implementation to court discretion. For example, the sanction to be imposed for violation is a matter within the discretion of the trial court.[8]

Therefore, this court holds that it had discretion in declining to instruct prospective witnesses not to discuss the case with each other, when it felt the circumstances did not warrant it.

### Problems with the Interpretation of 18 U.S.C. § 841 et. seq.

At the close of the United States' case in chief, the defendants moved the court to dismiss the indictment or direct a verdict in their favor on the grounds that 18 U.S.C. § 841 *et seq.* does not prohibit the conduct with which the defendants were charged. The defendants assert that any activity regarding M–80 and M–100 firecrackers is not prohibited under 18 U.S.C. § 841 *et seq.* in that the said firecrackers are not mentioned in the statute or in pertinent regulations as being within the purview of these statutes.

■ The defendant's contention cannot stand. 18 U.S.C. § 841(c) defines explosive materials as "explosives, blasting agents, and detonators." 18 U.S.C. § 841(d)

---

6. *Potashnic v. Port City Construction Company*, 609 F.2d 1101 (5th Cir. 1980), cert. den. 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

7. In equitable jurisprudence difficulty of enforcement or the necessity of an undue amount

of supervision by the court is itself a sufficient reason for the court's declining to enter an injunction. D. B. Dobbs, Remedies (1973).

8. J. Weinstein, Evidence, ¶ 615[03].

defines explosives as "any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion." There can be no doubt that in the present case the M–80 and M–100 firecrackers were certainly a device or chemical compound mixture which had the common purpose to function by explosion. Such materials by the statute's express language are clearly within the purview of 18 U.S.C. § 841 et seq.

Furthermore, to remove the issue from all doubt, the Secretary of the Treasury, in 18 U.S.C. § 841(d) is directed annually to publish the list of explosives within the coverage of the chapter. The list promulgated by the Secretary reveals that "explosive powders" are within the definition of explosive materials. The list also discloses that "perchlorate explosive mixtures" are determined to be within the coverage of 18 U.S.C. § 841 et seq. [9] The evidence at trial demonstrated that the material utilized in the manufacture of M–80 and M–100 firecrackers was an explosive powder consisting of *potassium perchlorate, sulfur*, and *powdered aluminum*. The evidence proved beyond any reasonable doubt that the powder is an "explosive powder" and that the powder was a "perchlorate explosive mixture."

The defendants further contend that even if 18 U.S.C. § 841 et seq. prohibits the alleged conduct engaged in by the defendants, 15 U.S.C. § 1261 et seq., the Federal Hazardous Substances Act prohibits the same conduct, and under the doctrine of lenity, the defendants should be charged under 15 U.S.C. § 1261 et seq., which makes the alleged conduct a misdemeanor.

■ It is true that ambiguities in criminal statutes must be resolved in favor of lenity.[10] However, the mere fact that two separate criminal provisions apply to the same conduct to create differing penalties is insufficient to invoke the doctrine of lenity.[11] Rather, for the doctrine to apply there must be an ambiguity in the type of conduct prohibited or the length of sentence to be imposed.[12]

In the present case there is no ambiguity under either statute. 15 U.S.C. § 1261 et seq., the Federal Hazardous Substances Act, prohibits the introduction into interstate commerce of banned hazardous substances. The purpose of the Act was to protect the general public, particularly children, from extremely hazardous products.[13] M–80 and M–100 firecrackers are considered banned goods or substances. See 16 C.F.R. § 1500.17(a)(3). The penalty for a violation of 15 U.S.C. § 1261 et seq. is a misdemeanor.

■ 18 U.S.C. § 841 et seq. was intended to protect interstate and foreign commerce against interference and interruption by reducing the hazards to persons and property arising from the misuse and unsafe or insecure storage of explosives.[14] 18 U.S.C. § 842 states in part that "it shall be unlawful to engage in the business of manufacturing and dealing in explosive materials without a license or to transport or cause to be transported into interstate commerce explosive materials without obtaining a license or a permit." See 18 U.S.C. §§ 842(a)(1), 842(a)(3)(A). Violation of the aforementioned sections can result in a penalty of not more than $10,000 and/or imprisonment of not more than 10 years. See 18 U.S.C. § 844(a).

In the present case, as in *Batchelder*, there is no ambiguity in either statute. The conduct proscribed and the penalty to be imposed is clear on the face of the two statutes. The Supreme Court held in *Batchelder* that two differing but separate and

---

**9.** 45 Federal Register No. 155 (1980); *United States v. Womack*, 654 F.2d 1034 (5th Cir. 1981).

**10.** *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971).

**11.** *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

**12.** *Id.*

**13.** *See United States v. Chalaire*, 316 F.Supp. 543 (E.D.La.1970); *see also* 1966 U.S.Code Cong. and Adm.News, p. 4095.

**14.** *See* 1970 U.S.Code Cong. and Adm.News, p. 4007 *et seq.*

non-ambiguous penalty provisions were capable of co-existing because they applied to convictions under two different, non-ambiguous statutes, despite the fact that the statutes proscribed the same conduct. The same situation obtains in the present case. Each substantive statute, in conjunction with its own sentencing provision, operates independently of the other.

It has long been recognized that, when an act violates more than one criminal statute, the government may prosecute under either, so long as it does not discriminate against any class of defendants.[15] In the present case the defendants do not contend nor was there any showing that there was any discrimination involved in the present case. Hence, pursuant to the foregoing discussion, the defendants motion to dismiss the indictment or to direct a verdict in conjunction with the doctrine of lenity was properly denied.

### III.

 As a final matter, the defendants moved the court to strike Paragraph 2 of Count I of the indictment which charged the defendants with conspiracy to violate 18 U.S.C. § 842(a)(3)(A), by knowingly transporting and shipping, and causing to be transported and shipped, in interstate commerce explosive materials without being licensees or permittees. Defendants argue that 18 U.S.C. § 845 expressly excludes from criminal prosecution under 18 U.S.C. § 842, transportation of Class B and C fireworks, since this matter is regulated by the Department of Transportation.

18 U.S.C. § 845 states:

"(a) Except in a case of Subsections (d), (e), (f), (g), (h), and (i) of § 844 of this title, this chapter shall not apply to:

(1) any aspect of the transportation of explosive materials via railroad, water, highway or air which are regulated by the United States Department of Transportation and agencies thereof..."

Hence, any aspect of the transportation of explosive materials regulated by the Department of Transportation is not subject to the criminal provisions of 18 U.S.C. § 841 *et seq.*

The key word in construing the meaning of § 845 is the word "aspect." Department of Transportation Regulations, 49 C.F.R. §§ 172.101, 173.88, 173.91 and 173.100 all deal with the manner in which Class B and C fireworks must be transported to promote safety. The Regulations prescribe certain requirements dealing with labeling, packaging, mode of transportation, placarding and shipping papers. Hence, the "aspect" of the transportation of Class B and C fireworks is the "manner in which the items must be transported."

In the present case there is no attempt by the United States to apply the criminal provisions of 18 U.S.C. § 841 *et seq.* to any aspect regulated by the Department of Transportation. The defendants were charged with conducting certain activities, including transportation in regard to explosive materials without a license. The requirement of a license is a separate aspect of transporting explosive materials, which is committed to the Secretary of the Treasury. *See* 18 U.S.C. § 843. Indeed, it is the intent of 18 U.S.C. § 841 *et seq.* to prevent persons from conducting certain activities, *i.e.*, storage, manufacturing, or transporting without a license.

The aspects regulated by the Department of Transportation pertain to the physical requirements or manner in which hazardous materials must be transported by one who has a license. Hence, the "aspect" governed by the Secretary of Treasury under 18 U.S.C. § 841 *et seq.* is *who* may transport, manufacture, etc. The aspect regulated by the Department of Transportation is *how* items may be transported once the transporter obtains a license. In the present case, therefore, the 18 U.S.C. § 845 exclusion does not apply since the defendants were not charged with any offense

**15.** *United States v. Batchelder, supra.*

concerning any aspect regulated by the Department of Transportation.[16]

Therefore, the defendants' motions for new trial must be denied.

Order accordingly.

## APPENDIX

### 18 U.S.C. § 842. Unlawful acts

"(a) It shall be unlawful for any person—

"(1) to engage in the *business of importing, manufacturing, or dealing* in explosive materials *without a license* issued under this chapter;

 * \* \* \* \* \*

"(3) other than a licensee or permittee knowingly—

(A) to transport, ship, cause to be transported, or receive in interstate or foreign commerce any explosive materials, except that a person who lawfully purchases explosive materials from a licensee in a State contiguous to the State in which the purchaser resides may ship, transport, or cause to be transported such explosive materials to the State in which he resides and may receive such explosive materials in the State in which he resides, if such transportation shipment, or receipt is permitted by the law of the State in which he resides; or

 * \* \* \* \* \*

"(j) It shall be unlawful for any person to store any explosive material in a manner not in conformity with regulations promulgated by the Secretary. In promulgating such regulations, the Secretary shall take into consideration the class, type, and quantity of explosive materials to be stored, as well as the standards of safety and security recognized in the explosives industry."

### 18 U.S.C. § 844. Penalties

"(a) Any person who violates subsections (a) through (i) of section 842 of this chapter

**16.** *United States v. Illingworth*, 489 F.2d 264 (10th Cir. 1973), cited by defendants, is not contrary to the above analysis. In *Illingworth, supra,* the Tenth Circuit set aside a conviction under 18 U.S.C. § 842(a)(3), unlawful transportation of explosive material without a permit required by law, based on the exclusion contained in 18 U.S.C. § 845(a). The defendant in *Illingworth* took an airplane flight from Pocatella, Idaho, to Salt Lake City, Utah, and then proceeded by airplane to Denver, Colorado, while carrying a handbag containing dynamite. His express reason for this enterprise was to help his father blow up some tree stumps at the latter's farm in Iowa.

The Tenth Circuit noted that it was clear that to transport dynamite was not necessarily prohibited, but the manner of its transportation was regulated. Transportation of such explosives by air was regulated by the Federal Aviation Administration, an agency of the Department of Transportation. The Tenth Circuit concluded that the appellant could not be prosecuted under 18 U.S.C. § 842(a)(3) by reason of the exception to its application. "Explosives are regulated by the Administrator of the Federal Aviation Administration, an agency of the Department of Transportation, in regard to the transportation by air."

The Congressional Declaration of Purpose relating to 18 U.S.C. § 841*ff* makes it clear that these statutes, as the *Illingworth* court held, were not intended to apply to the type of situation there presented.

"The Congress hereby declares that the purpose of this title [Title XI of Pub.L. 91–

452] is to protect interstate and foreign commerce against interference and interruption by reducing the unsafe or insecure storage of explosive materials. It is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, storage, or use of explosive materials for industrial, mining, agricultural, or other lawful purposes, or to provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title."

The defendant in *Illingworth* was apparently a law-abiding citizen who wished to use explosives for a lawful agricultural purpose, blasting tree stumps. He, apparently through ignorance, transported the explosive by air, this is the *aspect* that was regulated by the Department of Transportation. Congress intended that the criminal code apply to a criminal scheme of dealing in explosives such as we have in the case at bar.

The court held in *Illingworth* the gravamen of the offense committed by the defendant there was the transportation of the dynamite *by air*, an "aspect" regulated by the Department of Transportation. The gravamen of the offense of the defendants here is placing explosives in the stream of interstate commerce without having obtained a license. Thus *Illingworth* is of no avail to the defendants.

shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

**15 U.S.C. § 1263. Prohibited acts**

"The following acts and the causing thereof are prohibited:

"(a) The introduction or delivery for introduction into interstate commerce of any misbranded hazardous substance or banned hazardous substance."

**15 U.S.C. § 1264. Penalties; exceptions**

"(a) Any person who violates any of the provisions of section 1263 of this title shall be guilty of a misdemeanor and shall on conviction thereof be subject to a fine of not more than $500 or to imprisonment for not more than ninety days, or both; but for offenses committed with intent to defraud or mislead, or for second and subsequent offenses, the penalty shall be imprisonment for not more than one year, or a fine of not more than $3,000, or both such imprisonment and fine."