### UNITED STATES

v.

**Airman First Class David B. DESERANO, FR543–11–5649, United States Air Force.**

**ACM 30663.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 22 April 1993.

Decided 4 Jan. 1995.

Appellate Counsel for Appellant: Colonel Jay L. Cohen and Captain Eric N. Eklund.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Colonel Thomas E. Schlegel.

Before DIXON, YOUNG and BECKER, Appellate Military Judges.

### OPINION OF THE COURT

BECKER, Judge:

A military judge, sitting as a general court-martial, accepted the appellant's guilty

pleas to one specification each of possession of lysergic acid diethylamide (LSD) with intent to distribute and distribution of LSD, both violations of Article 112a, UCMJ.[1] The military judge also convicted the appellant, contrary to his pleas, of wrongfully inhaling nitrous oxide with the intent to become intoxicated, in violation of Article 134, UCMJ.[2] Appellant's sentence, as modified by the convening authority, consisted of a bad-conduct discharge, confinement for 10 months, forfeiture of $600 per month for 10 months, and reduction to E–1. Appellant asserts three assignments of error. One has merit, and requires us to set aside the findings of guilty to one charge and specification.

## I. POSSESSION OF LSD WITH INTENT TO DISTRIBUTE

Appellant contends his guilty plea to this specification was improvident. During the *Care*[3] inquiry, the appellant described receiving 46 "hits" of LSD in the mail from a high school friend. According to the appellant, the friend simply asked the appellant to hold the LSD for him. Appellant did so for several weeks, and expressly disavowed any intent to distribute during this time. Appellant was eventually approached, at different times, by two airmen asking for LSD. Appellant gave them each one "hit" from the stash he was "holding" for his friend. In response to questions from the military judge, the appellant said he did not think of distributing any of the LSD until approached, in turn, by the airmen. However, he expressly admitted that he had formed the intent to distribute just before giving away each "hit."

■ There is no published military case law on the issue of when an accused must form an intent to distribute in order to commit the offense of possession of a controlled substance with intent to distribute under Article 112a. In a prosecution under 21 U.S.C. § 841(a)(1) (an analogue of Article 112a), the Ninth Circuit held that a conviction for possession of heroin with intent to distribute was proper "... so long as the intent coincides *at some point* with possession in the United States." *United States v. Gomez–Tostado,* 597 F.2d 170, 173 (9th Cir.1979) (emphasis added). Although the question in *Gomez–Tostado* concerned the effect of the statute when possession of drugs is inside the United States, but the intent is to distribute them outside U.S. borders, we find the Ninth Circuit's reasoning applicable to the issue before us. We hold that an intent to distribute, formed at any point while in possession of controlled substances, is sufficient to support a conviction for possession with intent to distribute under Article 112a. This includes an intent first formed moments before an actual distribution. Appellant unequivocally admitted forming such an intent. Accordingly, his plea of guilty to possession of LSD with the intent to distribute was provident.

## II. INHALATION OF "NITROUS OXIDE"

Appellant's assignments of error here concern the legal sufficiency of this specification, and the factual sufficiency of the evidence to support his conviction. The evidence shows the appellant bought several aerosol cans of whipped cream and inhaled the propellant, informing other airmen present that the substance was "nitrous oxide."

### A. Sufficiency of the Specification

■ The specification of Charge II reads:

In that AIRMAN FIRST CLASS DAVID B. DESERANO, United States Air Force, 2d Airlift Squadron, did, at or near Pope Air Force Base, North Carolina, on or about 13 May 1992, wrongfully inhale nitrous oxide gas, with the intent to become intoxicated, which conduct under the circumstances was to the prejudice of good order and discipline in the armed forces.

All parties agree this specification was intended to allege a "simple disorder" under the first clause of Article 134.[4] Appellant

---

1. 10 U.S.C. § 912a (1988).

2. 10 U.S.C. § 934 (1988).

3. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969).

4. Apparently, there was no North Carolina statute proscribing nitrous oxide inhalation. At least, the parties at trial never mentioned one. In states where the laws address abuse of otherwise legal substances, these statutes may be as-

argues that the failure to allege nitrous oxide as an intoxicating substance is fatal to the specification's legal sufficiency, citing *United States v. Menta*, 39 C.M.R. 956, 1968 WL 5232 (A.F.B.R.1968). In *Menta*, the Air Force Board of Review found a specification that alleged the accused did "wrongfully sniff glue, such conduct being to the prejudice of good order and discipline ..." to be insufficient to state an Article 134(1) offense, in that it did not allege that glue was intoxicating. The government counters with its own venerable glue sniffing case, that of *United States v. Limardo*, 39 C.M.R. 866, 1969 WL 5981 (N.B.R.1969), in which the Navy board distinguished *Menta* and upheld an Article 134(1) specification which alleged a sailor "did wrongfully sniff glue with the intent to become intoxicated." The government thus argues that a specification passes muster under Article 134(1) when it alleges *either* that a substance is intoxicating or was used with the intent to become intoxicated.

■ We believe the reasoning in *Menta* and *Limardo* is obsolete. These cases were decided before the adoption of Article 112a, when most substance abuse offenses were prosecuted under Article 134(1). When Congress added Article 112a to the Code in 1983,[5] it intended to preempt prosecution, under any clause of Article 134, of any offense within the terms of Article 112a. *United States v. Reichenbach*, 29 M.J. 128, 137 (C.M.A.1989). However, Congress did not intend to preempt prosecution of other drug-related offenses under other applicable articles of the Code, including Article 134. *Id.,* 29 M.J. at 137 n. 8. In our view, the net effect of Article 112a and *Reichenbach* on prosecuting abuse of otherwise legal substances, such as glue or aerosol propellants, is twofold. First, any substance abuse offense not covered by Article 112a may be charged as a violation of Article 134(1). Second, the specification alleging such a violation need not expressly allege the substance as intoxicating, or that the accused's use was

with the intent to become intoxicated. To state an offense as a so-called "simple disorder" under Article 134(1), the specification need only allege the conduct, that such conduct was wrongful, and that it was prejudicial to good order and discipline in the armed forces, or language to that effect. *See United States v. Choate,* 32 M.J. 423 (C.M.A. 1991); *United States v. Wood,* 28 M.J. 318, 319 (C.M.A.1989); *United States v. Davis,* 26 M.J. 445 (C.M.A.1988).

■ The specification of Charge II sufficiently states a "simple disorder" under Article 134(1). However, the prosecution still had the task of proving the elements of such an offense. This leads us to the appellant's final assignment of error.

## B. Sufficiency of the Evidence

Appellant contends that the prosecution did not prove his inhalation of nitrous oxide was prejudicial to good order and discipline, an essential element of any Article 134(1) offense. MCM, Part IV ¶ 60b (1984). The prosecution attempted to introduce testimony from an agent of the Air Force Office of Special Investigations (AFOSI) to the effect that abuse of nitrous oxide was an increasing problem in the Air Force, inhaling the substance was dangerous, and people have died from inhaling nitrous oxide. For the most part, the defense frustrated these efforts by successful objections based on hearsay and lack of foundation for the witness' knowledge. As a result, the record contains no competent evidence of the harmful effects, if any, of inhaling nitrous oxide—assuming the gas was indeed nitrous oxide.

This brings us to a more fundamental problem with the prosecution's proof of this specification—there is no evidence the substance the appellant inhaled was nitrous oxide. It is clear he believed it was nitrous oxide. He told his companions it was "nitrous oxide." He later confessed to AFOSI that he had used "nitrous oxide." But there

similated in areas under federal jurisdiction and prosecuted under the third clause of Article 134, thus avoiding the issues presented here. *See* Federal Assimilative Crimes Act, 18 U.S.C. § 13 (1994). For simplicity, we will refer to the first clause of Article 134 as "Article 134(1)," even

though the article does not enumerate its clauses in this manner.

5. *See* Military Justice Act of 1983, Pub.L. No. 98–209 § 8, 97 Stat. 1393 (1983).

is no evidence that the gas was nitrous oxide. Everyone (including the military judge) assumed the identity of the gas in the whipped cream can without requiring any proof.

 We are perplexed by these deficiencies in the prosecution's case. Proving the chemical contents of a common aerosol product does not appear to be an overly complex task. Assuming for the moment that the can contained nitrous oxide, we also surmise that several locally available health care professionals would have had the education and experience to qualify as expert witnesses on the effects of inhaling that substance. *See* Mil.R.Evid. 702. It is readily apparent these omissions did not result from unavailability of competent evidence, but from the prosecution's failure to properly analyze the elements of proof and evidentiary foundations necessary to make its case on this specification.[6]

 Regardless of the reasons, the bottom line is the prosecution has not persuaded us beyond a reasonable doubt that the appellant committed a violation of Article 134(1). *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). To violate this clause of the general article, the conduct must have an effect on good order and discipline which is "reasonably direct and palpable;" effects which are "indirect or remote" are not enough. *United States v. Johanns*, 20 M.J. 155, 159 (C.M.A.) (citing MCM ¶ 212 (1969 Rev.Ed.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985); MCM, Part IV ¶ 60c(2)(a) (1983). Without proof of the identity of the substance the appellant ingested and its potential effects, we are unwilling to make a "leap of faith" to conclude his conduct

was a disorder punishable under Article 134(1).

 This opinion should not be construed as an endorsement of the appellant's actions. We do not hold, as a matter of law, that recreational ingestion of aerosol propellants is not prejudicial to good order and discipline. To the contrary, we are inclined to think that it is. However, in deciding the factual sufficiency of the evidence supporting a conviction, we are limited to the evidence presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A.1993). In this case, the prosecution simply failed to introduce evidence sufficient to prove to us, beyond a reasonable doubt, that a violation of Article 134(1) occurred.

## III. DECISION

 We set aside the findings of guilty to Charge II and its specification. In the interest of judicial economy, they are dismissed. We must now try to decide what the sentence would have been absent that improper conviction. *United States v. Sales*, 22 M.J. 305, 307 (C.M.A.1986). If we can determine what sentence would have been adjudged, we may reassess it; otherwise, we must return the case for a rehearing. *United States v. Jones*, 39 M.J. 315, 317 (C.M.A. 1994); *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). If we can determine what sentence would have been adjudged, we then must decide whether the sentence, as reassessed, is nonetheless appropriate. *Peoples*, 29 M.J. at 428; *Sales*, 22 M.J. at 308.

 After weighing the improper conviction of Charge II and its specification against the remaining convictions, we believe we can

---

6. We do not imply that the prosecution must, in all cases, introduce expert testimony or other scientific evidence to prove the identity of an abused substance. There is a long line of military precedent that the identity of such substances may be proven by lay opinion, and that contemporaneous declarations of abusers and traffickers are competent evidence to that end. *United States v. Koistinen*, 27 M.J. 279, 280 n. 4 (C.M.A.1988); *United States v. Matias*, 25 M.J. 356, 361 n. 6 (C.M.A.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1242, 99 L.Ed.2d 441 (1988); *United States v. Day*, 20 M.J. 213, 215 (C.M.A. 1985); *United States v. Tyler*, 17 M.J. 381, 387 (C.M.A.1984); *United States v. Michael*, 33 M.J.

900, 901 (A.F.C.M.R.1991); *United States v. Accordino*, 15 M.J. 825, 827–830 (A.F.C.M.R.1983), *rev'd on other grounds*, 20 M.J. 102 (C.M.A.1985); *United States v. Hickman*, 15 M.J. 674, 675 (A.F.C.M.R.), *pet. denied*, 17 M.J. 16 (C.M.A. 1983); *United States v. Villamil–Durand*, 46 C.M.R. 1070, 1071, 1973 WL 14557 (A.F.C.M.R. 1973). In this case, however, the appellant's statements, standing alone, are not sufficient to persuade us the whipping cream can contained "nitrous oxide." Even if the chemical identity of the gas had been proven, we would still require evidence of the effects of this otherwise legal substance before we could conclude that its ingestion is a violation of Article 134(1).

reassess the sentence. This specification is insignificant when compared with the appellant's convictions for distributing LSD and possessing LSD with the intent to distribute. We are confident that, absent the conviction of Charge II and its specification, the military judge would have adjudged the same sentence. We have given individualized consideration to the seriousness of the convictions, the character and military performance of the appellant, and all circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982). We find the sentence is not inappropriately severe.

The findings, as modified, and the sentence are correct in law and fact. Accordingly, they are

AFFIRMED.

Chief Judge DIXON and Judge YOUNG concur.