**UNITED STATES**

v.

**Airman Basic Charles J. CAPORALE,**
**United States Air Force**

**ACM S32116**

U.S. Air Force Court of Criminal Appeals.

Sentence adjudged 25 October 2012 by
SPCM convened at Ramstein Air
Base, Germany.

16 December 2013

Appellate Counsel for the Appellant: Captain Nicholas D. Carter.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Captain Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before ORR, HARNEY, and MITCHELL, Appellate Military Judges

## OPINION OF THE COURT

MITCHELL, Judge:

A special court-martial composed of a military judge convicted the appellant pursuant to his conditional plea of failure to obey a lawful general regulation, Air Force Instruction (AFI) 44–121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program*, ¶ 3.2.3 (11 April 2011), in violation of Article 92, UCMJ, 10 U.S.C. § 892. The adjudged and approved sentence consisted of a bad-conduct discharge and 200 days of confinement.

On appeal, the appellant avers that AFI 44–121 is void for vagueness.

### Background

At arraignment, the appellant filed a motion to dismiss the charge and specification arguing the underlying regulation, AFI 44–121, was void for vagueness. He conceded the AFI was a general regulation,[1] but argued the punitive language was so overly broad that it did not provide adequate notice. The military judge took judicial notice of AFI 44–121 and AFI 33–360, *Publications and Forms Management,* (18 May 2006, incorporating changes from 11 June 2009), which is the governing regulation for publishing Air Force Instructions.

The military judge denied the motion after finding that AFI 44–121 was a properly promulgated regulation that complied with the requirements of AFI 33–360. AFI 44–121 was issued "by order of the Secretary of the Air Force" and is applicable to the entire Air Force. The military judge also found AFI 44–121 provides notice that it is a punitive instruction and failure to observe the mandatory provisions of paragraphs 3.2.2 and 3.2.3 is a violation of Article 92, UCMJ, 10 U.S.C. § 892.

After the military judge denied the motion, the appellant entered a conditional guilty plea, reserving the right to appellate review of his motion in accordance with Rule for Courts–Martial 910(a)(2).

During the providence inquiry the appellant admitted to the following: On 15 June 2012, he met a friend who is a German national at the base exchange (BX). His

---

1. This Court has previously ruled that the 9 June 2010 Air Force Guidance Memorandum (AFGM) modifying Air Force Instruction (AFI) 44–121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program* (22 April 2010), which revised the earlier version of AFI 44–121 was a lawful general order. *United States v. Bagley,* ACM S31876, 2012 WL 5991611 (A.F.Ct.Crim. App. 30 November 2012) (unpub. op.), *rev'w denied,* 72 M.J. 246 (C.A.A.F.2013); *United States v. Jones,* ACM S32015, 2013 WL 3971588 (A.F.Ct. Crim.App. 15 July 2013) (unpub. op.). The AFGM contained the same language that is being challenged now as void for vagueness.

friend asked him if he wanted to try "FA," which the friend described as an amphetamine-type drug, an "upper," that was not illegal in Germany. His friend also told him it was not detectable on a drug test. The "FA" was a white powdery substance in a plastic baggy. After acquiring the drug from his friend, he went back to his room and researched it on the Internet. From his research, he determined the drug was fluroamphetamine, an amphetamine-type stimulant that "caused people to have a euphoric sensation similar to other amphetamines." He thought "FA" was "a legal substance that was a synthetic drug, designer drug, or natural substance that gives you a euphoric feeling similar to other amphetamine-type stimulants." Later that evening he went to another Airman's dorm room and, pulling the "FA" out of his sock, asked the three Airmen if they "wanted to use some drugs"; the other Airmen declined, so he left. The appellant admitted that it was wrongful to possess the drug because he intended to use it and the use of it would be unlawful. In response to the military judge's follow-up questions, the appellant further explained that the use would be unlawful "because [his] purpose was to alter [his] mood or function. Essentially to get high, ma'am."

The appellant had previously been convicted at a special court-martial of the wrongful possession of psilocybin mushrooms and the wrongful use of marijuana in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. That court sentenced him to 14 days confinement, restriction to the limits of Ramstein Air Base, Germany, for 2 months, forfeiture of $300 pay per month for 6 months, reduction to E–1, and a reprimand. The appellant had completed his term of confinement prior to meeting his friend at the BX on 15 June 2012.

The appellant testified during the sentencing portion of the trial. He admitted he did not take seriously either the first court-martial conviction or its punishment. However he asserted that the recent 120 days in pretrial confinement "had a profound impact on [his] life" and he was a different person now. Trial counsel's cross-examination of the accused included the following:

Q: Is that how you learned your lesson? You were convicted once for testing positive on a drug test, so you figure it's better now to find drugs that you won't test positive for?

A: Yes, sir. As I was explaining before in my statement, it did not have the profound effect from that experience, from the court, from the confinement, from everything that went on before recently that I would have, to really get it together in my head.

Q: So rather than just using a drug that you could get caught for, once it was given to you, you chose to possess a drug that you knew you wouldn't get caught testing positive for?

A: Yes, sir, I honestly believed I wouldn't get caught.

### *Void for Vagueness*

■ Upon a challenge to the lawfulness of a regulation, we review the military judge's findings of fact under a clearly erroneous standard and the determination as to the lawfulness of the regulation is reviewed de novo. *United States v. Hughey,* 46 M.J. 152, 154 (C.A.A.F.1997). We find the military judge's findings of fact were not clearly erroneous and adopt them as our own.

■ General regulations are those regulations generally applicable to an armed force which are properly published by the secretary of a military department. *Manual for Courts–Martial, United States,* Part IV, ¶ 16.c.(1) (2008 ed.). AFI 44–121 was published under the authority of the Secretary of the Air Force and in accordance with AFI 33–360, which governs the publication of punitive instructions. "Because the regulation was issued over the signature of an officer authorized to issue a general regulation and is presumed to be lawful, [the] appellant has the burden to establish otherwise." *Hughey,* 46 M.J. at 154 (internal citation omitted). AFI 44–121, paragraph 3.2.3, reads as follows:

In order to ensure military readiness; safeguard the health and wellness of the force; and maintain good order and discipline in the service, the knowing use of any

intoxicating substance, other than the lawful use of alcohol or tobacco products, that is inhaled, injected, consumed, or introduced into the body in any manner to alter mood or function is prohibited. These substances include, but are not limited to, controlled substance analogues (e.g., designer drugs such as "spice" that are not otherwise controlled substances); inhalants, propellants, solvents, household chemicals, and other substances used for "huffing"; prescription or over-the-counter medications when used in a manner contrary to their intended medical purpose or in excess of the prescribed dosage; and naturally occurring intoxicating substances (e.g., Salvia divinorum). The possession of any intoxicating substance described in this paragraph, if done with the intent to use in a manner that would alter mood or function, is also prohibited. Failure by military personnel to comply with the prohibitions contained in this paragraph is a violation of Article 92, UCMJ.

■■■ "Due process requires 'fair notice' that an act is forbidden and subject to criminal sanction." *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F.2003). "To withstand a challenge on vagueness grounds, a regulation must provide sufficient notice so that a servicemember can reasonably understand that his conduct is proscribed." *United States v. Pope*, 63 M.J. 68, 73 (C.A.A.F.2006) (citing *United States v. Moore*, 58 M.J. 466, 469 (C.A.A.F.2003)). Sources of "fair notice" include federal law, state law, military case law, military custom and usage, military regulations, along with training and other materials that "give context to regulations and explain the differences between permissible and impermissible behavior." *Pope*, 63 M.J. at 73. The "void-for-vagueness" doctrine requires the criminal activity to be defined with sufficient clarity such that "ordinary people can understand what conduct is prohibited

and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

■■■ The appellant argues that the regulation is "void for vagueness" because the term "intoxicating substance" is not defined and because many · legal substances may alter mood or function. The appellant attempts to prove his argument by averring that a servicemember who drinks a cup of coffee to stay alert is violating the regulation as he is consuming a substance to alter his mood or function. In *United States v. Cochrane*, 60 M.J. 632 (N–M.Ct.Crim.App.2004), *rev'w denied*, 60 M.J. 308 (C.A.A.F.2004), our Navy and Marine Corps colleagues considered an unconstitutional void for vagueness challenge to a Navy instruction that prohibited the unlawful use of designer drugs, natural substances, chemicals and medications with the intent to induce intoxication, excitement or stupefaction of the central nervous system (similar to AFI 44–121). Like them, we reject this argument. While an "intoxicating substance" is not defined, the term "intoxication" is sufficiently defined.[2] There is an "underlying awareness that intoxication and impairment can adversely impact ... duty performance." *United States v. Green*, 22 M.J. 711, 717 (A.C.M.R.1986). Similar to the Navy and Marine Court, we find the Secretary of the Air Force has "a legitimate and overriding interest in preventing the *unlawful* use by [Air Force personnel] of controlled substance analogues, natural substances, chemicals, propellants, and/or prescribed or over-the-counter drug or pharmaceutical compounds, when those persons have the *intent* to induce intoxication." *Cochrane*, 60 M.J. at 635 (emphasis in the original).

Even before the addition of Article 112a to the Uniform Code of Military Justice in 1983, the military prosecuted substance abuse cases.[3] "Glue sniffing," which involves the

---

**2.** Attachment 1 of AFI 44–121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program*, (11 April 2011), defines "intoxication" in its Terms section: "Intoxication—Maladaptive behavior, such as aggressiveness, impaired judgment, and manifestation of impaired social or occupational functioning, because of recent ingestion, inhalation, or injection of any substance into the body. Characteristic physiological and

psychological signs include flushed face, slurred speech, unsteady gait, Nystagmus, lack of coordination, impaired attention, irritability, euphoria, or depression."

**3.** See *United States v. Deserano*, 41 M.J. 678 (A.F.Ct.Crim.App.1995) for a discussion of the interplay between prosecuting substance abuse

misuse of an otherwise legal substance when it includes either actual intoxication or the use with the intent to become intoxicated, has long been upheld as a valid military offense. *See United States v. Limardo,* 39 C.M.R. 866 (N.B.R.1969); *United States v. Menta,* 39 C.M.R. 956 (A.F.B.R.1968). The abuse of otherwise legal substances, such as glue or aerosol propellants was charged under Article 134, UCMJ, and needed only to allege the conduct, that the conduct was wrongful, and that it was prejudicial to good order and discipline. *United States v. Deserano,* 41 M.J. 678, 681 (A.F.Ct.Crim.App. 1995). Our superior court upheld a conviction for the wrongful use of nitrous oxide, another otherwise legal substance, under Article 134, UCMJ, as prejudicial to good order and discipline, even when the local state law did not prohibit its use. *United States v. Erickson,* 61 M.J. 230 (C.A.A.F.2005). Our superior court also upheld a conviction under Article 134, UCMJ, for the abuse of cough and cold medicine. *United States v. Nance,* 67 M.J. 362 (C.A.A.F.2009). Military case law therefore provided the appellant with "fair notice" that the use and possession of legal substances when done with the intent to cause intoxication is prohibited and criminal.[4]

 Even a regulation that is facially vague or overly-broad may be constitutionally sound when a *mens rea* requirement is read into it. *United States v. Cannon,* 13 M.J. 777 (A.C.M.R.1982), *cited in United States v. McDavid,* 37 M.J. 861 (A.F.C.M.R. 1993). In *Cannon,* the Army court examined a regulation that prohibited the possession and introduction of devices, such as syringes, hypodermic needles, and roach clips. The appellant in that case made a similar argument that "the regulation in this case can be interpreted to criminalize the possession of otherwise innocent items." *Id.* However, that Court upheld that regulation by inferring the additional "requirement of scienter" that the possession of the devices must be

with the intent to use prohibited drugs. *Id.* Similarly we find that AFI 44–121 when read as a whole has a similar requirement of scienter. Regulatory interpretation, much like statutory construction, is a holistic endeavor and where possible a regulation should be construed so that no clause, sentence, or word is superfluous, void, or insignificant. *See United Sav. Ass'n v. Timbers of Inwood Forest Assoc.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Paragraph 3.2.3 of AFI 44–121 must be read in conjunction with the definitions of its terms. When reading the terms and the paragraph together, it is obvious that the use of an otherwise innocent substance is prohibited only when done with an intent to alter mood or function such as to cause *intoxication.* We see no reasonable reading of this regulation that would equate consuming a morning cup of coffee, an energy drink during midshift, or cough and cold medication when one is ill as meeting the scienter requirement because none of these activities would have been undertaken with the intent to alter mood or function as to cause intoxication within the definitions of AFI 44–121.

The facts as developed in the plea inquiry further show that the appellant and other Airmen were aware of this prohibition on the use and possession of intoxicating substance. The appellant offered this "drug" to other Airmen, who wisely declined to engage in criminal activity with him. He intended to use this particular substance, which he believed was similar to amphetamine, to "get high." Furthermore, he possessed this substance in part because he believed that his use would not be detected by urinalysis drug screening and he believed that he would not be caught.

AFI 44–121 and military case law provide "fair notice" to all Airmen not to use intoxicating substances for the purpose of altering mood or function regardless of whether such

under Articles 112a and 134, UCMJ, 10 U.S.C. §§ 912a, 934.

4. We note that we have upheld a conviction under Article 134, UCMJ, when an appellant possessed "Fair Dinkum Aromatherapy Mandarin" with the intent to become incapacitated. *United States v. Ray,* ACM S31431, 2009 WL

367675 (A.F.Ct.Crim.App. 13 February 2009) (unpub. op.) *rev'w denied,* 68 M.J. 182 (C.A.A.F. 2009). Our prior decisions on the Air Force Guidance Memorandum to AFI 44–121 cannot provide fair notice as they were decided after the appellant committed the offense.

substances are detectable. The regulation is specifically designed for this situation, where an Airman intends to jeopardize his own health and safety and the health and safety of his fellow Airmen, by ingesting an otherwise legal substance for its intoxicating effect to "get high." The Air Force has properly promulgated a regulation to ensure military readiness and safeguard its Airmen and has done so in a way that meets due process requirements. AFI 44–121 establishes a clear standard against which an individual's conduct is measured, is constitutionally sound, does not encourage either arbitrary or discriminatory enforcement, and makes it clear that a criminal intent is required. The appellant was on "fair notice" that the possession of an intoxicating substance with the intent to later use that substance to alter his mood or function such as to cause intoxication was prohibited.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[5] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.

---

5. A charge alleging a violation of soliciting others to commit an offense in violation of Article 134, UCMJ, was withdrawn by the convening authority after arraignment. The court-martial order (CMO) needs to be corrected to include this charge and its disposition as the CMO must include any charge and specification dismissed after arraignment. Rule for Courts–Martial 1114(c)(1). Additionally, the CMO is incorrect in listing that the sentence was adjudged by officer members when this case was military judge alone. Accordingly we order a new CMO to correct these non-prejudicial errors. Air Force Instruction 51–201, *Administration of Military Justice,* ¶ 10.10 (6 June 2013).